UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 19bk31162 |
| Emily Moore, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| Joel F. Handler, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. No. 20ap00074 |
| v. | ) | |
| | ) | Judge Timothy A. Barnes |
| Emily Moore, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

TIMOTHY A. BARNES, Judge.

<u>MEMORANDUM DECISION</u>

The matter before the court arises out of a Motion to Dismiss [Adv. Dkt. No. 6] (the "<u>Motion</u>") brought by defendant/debtor Emily Moore (the "<u>Debtor</u>"), in which the Debtor seeks dismissal of the single-count Complaint for Declaratory Judgment Objecting to the Discharge of a Particular Debt Pursuant to 11 U.S.C. § 523(a)(2)(A) [Adv. Dkt. No. 1] (the "<u>Complaint</u>") brought by plaintiff Joel F. Handler (the "<u>Plaintiff</u>").

The Complaint alleges that the Debtor, *inter alia*, incurred legal services from the Plaintiff, an Illinois attorney, without making the commensurate payment for the same, falsely represented to the Plaintiff the Debtor's ability and intent to pay for such services and, ultimately, incurred the obligation under false pretenses as the Debtor never intended to pay for them.

When, as is required, the court draws all reasonable inferences in the favor of the Plaintiff, the Complaint states a claim for relief, but only just. But for the Plaintiff's speculation as to the Debtor's intent, the Plaintiff pleads a case that is merely breach of contract, not false pretenses, false representation, or actual fraud. While inferring intent where the facts otherwise are silent is not reasonable, the rules of pleading permit it. As a result, the Complaint states a claim upon which relief may be granted and the Motion must be denied.

Given the sophistication of the Plaintiff and the Plaintiff's extensive experience bringing matters such as this to this court, the court cautions the Plaintiff that more will be expected of the Plaintiff at the later stages of this adversary proceeding, so as to demonstrate that the Complaint was

not brought with knowledge of deficiencies, solely on the chance of winning by default or procuring a nuisance settlement.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred has statutory authority to enter final judgment on any proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Bankruptcy judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(3). As to the former, the bankruptcy court may hear and determine such matters. 28 U.S.C. § 157(b)(1). As to the latter, the bankruptcy court may hear the matters, but may not decide them without the consent of the parties. 28 U.S.C. §§ 157(b)(1), (c). Absent consent, the bankruptcy court must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

In addition to the foregoing considerations, a bankruptcy judge must also have constitutional authority to hear and determine a matter. *Stern v. Marshall*, 564 U.S. 462 (2011). Constitutional authority exists when a matter originates under the Bankruptcy Code or, in noncore matters, where the matter is either one that falls within the public rights exception, *id.*, or where the parties have consented, either expressly or impliedly, to the bankruptcy court hearing and determining the matter. *See, e.g.*, *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1939 (2015) (parties may consent to a bankruptcy court's jurisdiction); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough").

The sole count of the Complaint is based on section 523(a)(2)(A) of the Bankruptcy Code. Section 523 is unequivocally a bankruptcy cause of action. While such actions may turn on state law, determining the scope of a debtor's discharge is a fundamental part of the bankruptcy process. *See Deitz v. Ford* (*In re Deitz*), 469 B.R. 11, 20 (B.A.P. 9th Cir. 2012). As observed by one bankruptcy court, "there can be little doubt that [a bankruptcy court], as an Article I tribunal, has the constitutional authority to hear and finally determine what claims are non-dischargeable in a bankruptcy case." *Farooqi v. Carroll* (*In re Carroll*), 464 B.R. 293, 312 (Bankr. N.D. Tex. 2011); *see also Dietz*, 469 B.R. at 20; *Dragisic v. Boricich* (*In re Boricich*), 464 B.R. 335, 337 (Bankr. N.D. Ill. 2011) (Schmetterer, J.). It follows that a motion to dismiss such an action is also a matter within the court's constitutional authority. Further, no party has objected to the court entering final orders on the Motion and thus all parties have impliedly consented to this court's jurisdiction. *See Wellness*, 135 S. Ct. at 1939; *Richer*, 798 F.3d at 490.

2

Accordingly, determination of the Motion is within the scope of the court's jurisdiction and statutory and constitutional authority.

## HISTORY

The Complaint sets forth the relationship of the parties, as follows:

- On August 21, 2016, the Debtor retained the Plaintiff "to render legal services in connection with a post-decree domestic relations action against her former husband." Compl., at ¶ 7.

- Pursuant to her agreement with the Plaintiff, the Debtor agreed to compensate the Plaintiff "at the rate of $475.00 per hour and to reimburse him for all costs, including long distance calls, photocopying and mailings, in connection with the action for which he was retained." Compl., at ¶ 8 & Ex. A.

- The Debtor made numerous representations to the Plaintiff regarding payment of those same services and costs; such services went mostly if not entirely unpaid. Compl., at ¶¶ 9–12, 16–18, 21–24, 26–27, 29, 31–32, 34, 36, 38, 40–42, 45–46, 49–51, 53–61, 64–65, 67–72, 74–75, 77–82.[1]

- All told, the Plaintiff worked for the Debtor from August 21, 2016 to December 14, 2017, without full payment for the Plaintiff's services. Compl., at ¶¶ 7, 81 *et passim.*

- The Plaintiff is owed over $47,000 for the unpaid services. Compl., at ¶ 87.

As set forth in the Complaint, the parties' relationship deteriorated to a point where the Plaintiff withdrew from his representation of the Debtor in the state court proceedings.[2]

On October 31, 2019, more than two years after the Plaintiff withdrew from his representation of the Debtor, the Debtor commenced the above-captioned chapter 7 bankruptcy case. After the Plaintiff filed the Complaint commencing this adversary proceeding, the Debtor filed the Motion at bar. In response, the court entered an order scheduling briefing on the Motion. Order [Scheduling Motion to Dismiss] [Adv. Dkt. No. 9]. In accordance with the Order, the Plaintiff filed Adversary Plaintiff's Memorandum in Opposition to the Adversary Defendant's Motion to Dismiss [Adv. Dkt. No. 10] (the "Response") and the Debtor filed her Reply in Support of Motion to Dismiss [Adv. Dkt. No. 11] (the "Reply").

---

[1] The Complaint does little to shed light on what monies the Plaintiff may have received, if any. While the Complaint never alleges receipt of any payment, it also never alleges that no payment at all was made. Further, no mention is made of the retainer required by the Plaintiff's engagement agreement. *See* Compl., Ex. A, at p. 1.

[2] The motion to withdraw attached to the Complaint does not, however, cite nonpayment as the reason for withdrawal. Instead, the motion alleges general irreconcilable differences of trust, confidence and philosophy. Compl., Ex. E.

On June 1, 2020, the court conducted a hearing on the fully-briefed Motion (the "Hearing"), at which time the matter was taken under advisement for later oral or written ruling. Since that time several status hearings have been continued while the court has worked on this Memorandum Decision.

The court has reviewed the Complaint, the Motion, the Response and the Reply, including all exhibits attached thereto,[3] and has taken into account the parties' statements at the Hearing. Though the foregoing items do not constitute an exhaustive list of the filings in this adversary proceeding, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 1989) (Goldgar, J.) (recognizing same).

APPLICABLE LAW

A.    Nondischargeability

The sole count of the Complaint asserts a claim under section 523(a)(2)(A) of the Bankruptcy Code. This count alleges that the Debtor's statements to the Plaintiff constitute misrepresentations. Specifically, the Plaintiff alleges that the Debtor repeatedly and falsely promised to pay for the services rendered by the Plaintiff and that such misstatements indicate that the Debtor entered into her contractual relationship with the Plaintiff without an intent to perform, thus fraudulently inducing the Plaintiff to perform.

Section 523 enumerates specific, limited exceptions to the dischargeability of debts. Section 523(a)(2)(A) provides, in relevant part, that an individual debtor is not discharged from any debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition….

11 U.S.C. § 523(a)(2)(A).

Under section 523, a plaintiff must first establish that the debtor owes him or her a debt. *See Zirkel v. Tomlinson (In re Tomlinson)*, Adv. No. 96 A 1539, 1999 WL 294879, at *7 (Bankr. N.D. Ill. May 10, 1999) (Katz, J.). Second, a plaintiff must show that the debt falls within one of the specified grounds under section 523(a)(2)(A). *Wachovia Secs., LLC v. Jahelka (In re Jahelka)*, 442 B.R. 663, 668 (Bankr. N.D. Ill. 2010) (Goldgar, J.). Three separate grounds for holding a debt to be nondischargeable are included under section 523(a)(2)(A): false pretenses; false representation; and actual fraud. *Id.*; *see also Deady v. Hanson (In re Hanson)*, 432 B.R. 758, 771 (Bankr. N.D. Ill. 2010)

---

[3]    For the reasons more fully discussed below, as some of the exhibits attached to the Response go beyond what the Plaintiff attached to the Complaint, such exhibits were not considered in reaching the determination that the Motion states a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(d).

4

(Squires, J.); *Bletnitsky v. Jairath* (*In re Jairath*), 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001) (Schmetterer, J.).

The party seeking to establish an exception to the dischargeability of a debt bears the burden of proof. *Goldberg Secs., Inc. v. Scarlata* (*In re Scarlata*), 979 F.2d 521, 524 (7th Cir. 1992); *Harris N.A. v. Gunsteen* (*In re Gunsteen*), 487 B.R. 887, 899 (Bankr. N.D. Ill. 2013) (Schmetterer, J.). A creditor must meet this burden by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291 (1991); *see also In re McFarland,* 84 F.3d 943, 946 (7th Cir. 1996). To further the policy of providing a debtor a fresh start, exceptions to the dischargeability of a debt are to be construed strictly against a creditor and liberally in favor of a debtor. *See In re Crosswhite*, 148 F.3d 879, 881 (7th Cir. 1998); *Meyer v. Rigdon*, 36 F.3d 1375, 1385 (7th Cir. 1994).

The Complaint alleges claims under section 523(a)(2)(A) based on false representations or false pretenses, though it also implies a cause of action under a fraudulent inducement theory.

      1.      False Representation and False Pretenses

To except a debt from discharge under section 523(a)(2)(A) based on false pretenses or a false representation, the creditor must establish the following elements: (1) the debtor made a false representation or omission of fact; (2) which the debtor (a) knew was false or made with reckless disregard for its truth and (b) made with an intent to deceive; and (3) upon which the creditor justifiably relied. *Reeves v. Davis* (*In re Davis*), 638 F.3d 549, 553 (7th Cir. 2011); *see also Ojeda v. Goldberg*, 599 F.3d 712, 716–17 (7th Cir. 2010); *In re Bero*, 110 F.3d 462, 465 (7th Cir. 1997); *Jahelka*, 442 B.R. at 668–69. A creditor must establish all three elements to support a finding of false pretense or false representation. *Baermann v. Ryan* (*In re Ryan),* 408 B.R. 143, 156 (Bankr. N.D. Ill. 2009) (Squires, J.); *see also Rae v. Scarpello* (*In re Scarpello*), 272 B.R. 691, 700 (Bankr. N.D. Ill. 2002) (Squires, J.). Put differently, a failure to establish any one element is outcome determinative. *Hanson*, 432 B.R. at 771 (*citing Jairath,* 259 B.R. at 314).

Under section 523(a)(2)(A), a false representation is an express misrepresentation that can be demonstrated either by a spoken or written statement or through conduct. *See Scarpello*, 272 B.R. at 700; *Nite Lite Signs and Balloons, Inc. v. Philopulos* (*In re Philopulos*), 313 B.R. 271, 281 (Bankr. N.D. Ill. 2004) (Schmetterer, J.); *New Austin Roosevelt Currency Exch., Inc. v. Sanchez* (*In re Sanchez*), 277 B.R. 904, 908 (Bankr. N.D. Ill. 2002) (Schmetterer, J.). As a spoken or written statement is not required for a false representation, "[a] debtor's silence regarding a material fact can constitute a false representation under § 523(a)(2)(A)." *Hanson*, 432 B.R. at 772 (internal quotation omitted); *see also Scarpello*, 272 B.R. at 700. "A debtor's failure to disclose pertinent information may be a false representation where the circumstances imply a specific set of facts and disclosure is necessary to correct what would otherwise be a false impression." *Ryan*, 408 B.R. at 157 (*citing Trizna & Lepri v. Malcolm* (*In re Malcolm*), 145 B.R. 259, 263 (Bankr. N.D. Ill. 1992) (Wedoff, J.)).

In contrast, "[f]alse pretenses in the context of section 523(a)(2)(A) include implied misrepresentations or conduct intended to create or foster a false impression." *Media House Prods., Inc. v. Amari* (*In re Amari*), 483 B.R. 836, 846 (Bankr. N.D. Ill. 2012) (Schmetterer, J.) (*citing Mem'l Hosp. v. Sarama* (*In re Sarama*), 192 B.R. 922, 927 (Bankr. N.D. Ill. 1996) (Squires, J.) (*quoting Sterna v. Paneras* (*In re Paneras),* 195 B.R. 395, 406 (Bankr. N.D. Ill. 1996) (Squires, J.))). The implication arises when a debtor, with the intent to mislead a creditor, engages in "a series of events, activities or communications which, when considered collectively, create a false and misleading set of

5

circumstances, or … understanding of a transaction, in which [the] creditor is wrongfully induced by [the] debtor to transfer property or extend credit to the debtor …." *Paneras,* 195 B.R. at 406 (internal quotations omitted); *see also Amari,* 483 B.R. at 846.

A false pretense does not necessarily require overt misrepresentations. *Paneras,* 195 B.R. at 406. "Instead, omissions or a failure to disclose on the part of the debtor can constitute misrepresentations where the circumstances are such that omissions or failure to disclose create a false impression which is known by the debtor." *Id.; see also Hanson,* 432 B.R. at 771 (finding that a false pretense is "established or fostered willfully, knowingly and by design; it is not the result of inadvertence" (internal quotation marks omitted)).

An element common to a false representation and false pretenses is reliance. The United States Supreme Court has clarified that section 523(a)(2)(A) requires only a showing of "justifiable" reliance. *See Field v. Mans,* 516 U.S. 59, 73–75 (1995); *see also Mayer v. Spanel Int'l Ltd.,* 51 F.3d 670, 673 (7th Cir. 1995). Justifiable reliance is a less demanding standard than reasonable reliance and "does not mean that [the creditor's] conduct must conform to the standard of the reasonable man." *Paneras,* 195 B.R. at 406 (*quoting Field,* 516 U.S. at 71). Rather, justifiable reliance "requires only that the creditor did not 'blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'" *Ojeda,* 599 F.3d at 717 (*quoting Field,* 516 U.S. at 71).

Whether a party justifiably relies on a misrepresentation is "determined by looking at the circumstances of a particular case and the characteristics of a particular plaintiff." *Id.; see also Bombardier Capital, Inc. v. Dobek* (*In re Dobek*), 278 B.R. 496, 508 (Bankr. N.D. Ill. 2002) (Schmetterer, J.). "[A] person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'" *Mercantile Bank v. Canovas,* 237 B.R. 423, 429 (Bankr. N.D. Ill. 1998) (Lefkow, J.) (*quoting Field,* 516 U.S. at 70). "*However, a plaintiff may not bury his head in the sand and willfully ignore obvious falsehoods.*" *Johnston v. Campbell* (*In re Campbell*), 372 B.R. 886, 892 (Bankr. C.D. Ill. 2007) (internal quotations omitted) (emphasis added).

Several courts in this Circuit have determined that "[t]o satisfy the reliance element of § 523(a)(2)(A), the creditor must show that the debtor made a material misrepresentation that was the cause-in-fact of the debt that the creditor wants excepted from discharge." *Scarpello,* 272 B.R. at 700; *see also Mayer,* 51 F.3d at 676 ("reliance means the conjunction of a material misrepresentation with causation in fact"); *Hanson,* 432 B.R. at 773. Accordingly, these courts have required the plaintiff to show that the debtor's conduct proximately caused the plaintiff's loss, thus making proximate cause an additional requirement under section 523(a)(2)(A). *See Heptacore, Inc. v. Luster* (*In re Luster*), 50 F. Appx. 781, 784 (7th Cir. 2002); *Tomlinson,* 1999 WL 294879, at *7; *Microtech Int'l v. Horwitz* (*In re Horwitz*), 100 B.R. 395, 397–98 (Bankr. N.D. Ill. 1989) (Katz, J.).

2.      Promises to Pay as Misrepresentations

The foregoing analysis, however, has a major, court-made exception—promises to pay are generally not actionable.

As Judge Goldgar of this court has explained, "[t]o be actionable under section 523(a)(2)(A), a false representation[] must ordinarily relate to a 'present or past fact.'" Order Granting in Part and Denying in Part Motion to Dismiss, at p. 5 [Adv. Dkt. No. 21 in *Handler v. Delfino,* Case No.

11bk36013, Adv. No. 11ap01891 (Bankr. N.D. Ill. filed Sept. 14, 2011) (Goldgar, J.) (*citing Santiago v. Hernandez (In re Hernandez)*, 452 B.R. 709, 723 (Bankr. N.D. Ill. 2011) (Sonderby, J.)) ("*Handler I*")]. A promise is actionable only if the debtor made the representation with no intention of ever keeping the promise. *Id.* at p. 6. As Judge Goldgar explained:

> A representation about an act to be performed in the future – a promise, in other words – is actionable only if the debtor made the representation with no intention of ever keeping the promise. *Perlman v. Zell*, 185 F.3d 850, 852 (7th Cir. 1999); *Hernandez*, 452 B.R. at 723. Typically, then, a debtor's false contractual promise will not support a section 523(a)(2)(A) claim. *Rezin v. Barr (In re Barr)*, 194 B.R. 1009, 1017–18 (Bankr. N.D. Ill. 1996).

*Id.*; *see also* Order Granting in Part and Denying in Part Motion to Dismiss, at p. 6 [Adv. Dkt. No. 22 in *Handler v. Boland*, Case No. 19bk00612, Adv. No. 19ap00605 (Bankr. N.D. Ill. filed April 8, 2019) (Goldgar, J.) ("*Handler II*")].

In *Handler I* and *Handler II*, Judge Goldgar dismissed counts from several of the Plaintiff's similar complaints in those matters, but ultimately, in *Handler II*, he found that one count, predicated on fraudulent inducement, did meet the minimum pleading standards. *Handler II*, at pp. 6–8. As stated therein, "[a] debtor's representations of his performance or ability to perform under a contract are representations of past or present fact. *Cf. Woods. v. Larson (In re Larson)*, Case No. 07-81981, Adv. No. 07-8153, 2009 WL 1705714, at *5 (Bankr. C.D. Ill. June 17, 2009) (finding actionable the debtors' false statements that they had the resources to repay loans)." *Id.* at p. 7.

Judge Cassling has taken a slightly different approach, summarizing this area of the law as follows:

> A simple breach of contract, one involving no element of deceit, does not produce a nondischargeable debt under § 523(a)(2)(A). *Reeves v. Davis (In re Davis)*, 638 F.3d 549, 554 (7th Cir. 2011). Representations to do future acts do not constitute false representations for purpose of § 523(a)(2)(A) unless the debtors never intended to perform. *Levine v. Ward (In re Ward)*, 425 B.R. 507, 516 (Bankr. E.D. Wisc. 2010). 'A promise constitutes a false representation under § 523(a)(2)(A) only if the debtor(s) made the promise without an intention of ever keeping it.' *Parkway Bank & Trust v. Casali (In re Casali)*, 517 B.R. 835, 843 (Bankr. C.D. Ill. 2014).

Order Determining Dischargeability of Debt, at p. 9, ¶ F [Adv. Dkt. No. 175 in *Handler v. Burkhart*, Case No. 14bk24345, Adv. No. 14ap00699 (Bankr. N.D. Ill. filed Sept. 25, 2014) (Cassling, J.) ("*Handler III*")].

Thus, while a promise to pay alone, in and of itself, is not actionable, statements regarding resources to repay may be and promises made without the intention of ever keeping them may also suffice.

3.    Intent

As noted above, much of this matter turns on the issue of intent. *Scienter*, or intent to deceive, is a required element under section 523(a)(2)(A) whether the claim is for a false

representation, false pretenses, or actual fraud. *Mayer*, 51 F.3d at 673; *Pearson v. Howard (In re Howard)*, 339 B.R. 913, 919 (Bankr. N.D. Ill. 2006) (Schwartz, J.).

Intent to deceive is measured by the debtor's subjective intention at the time of the representations or other purportedly fraudulent conduct. *See Scarpello*, 272 B.R. at 700; *see also CFC Wireforms, Inc. v. Monroe (In re Monroe)*, 304 B.R. 349, 356 (Bankr. N.D. Ill. 2004) (Schmetterer, J.). Subsequent acts of fraud or omissions do not demonstrate that the debtor had the requisite intent at the time the representations were made. *Standard Bank & Trust Co. v. Iaquinta (In re Iaquinta)*, 95 B.R. 576, 578 (Bankr. N.D. Ill. 1989) (Squires, J.).

An intent to deceive may be established through direct evidence or inference. *Monroe*, 304 B.R. at 356 (*citing In re Sheridan,* 57 F.3d 627 (7th Cir. 1995)). Because direct proof of fraudulent intent is often unavailable, fraudulent intent "may be determined from the totality of the circumstances of a case and may be inferred when the facts and circumstances present a picture of deceptive conduct on the debtor's part." *Cent. Credit Union of Ill. v. Logan (In re Logan)*, 327 B.R. 907, 911 (Bankr. N.D. Ill. 2005) (Cox, J.) (internal quotation marks omitted); *see also Hanson*, 432 B.R. at 773. Thus, "[w]here a person knowingly or recklessly makes false representations which the person knows or should know will induce another to act, the finder of fact may logically infer an intent to deceive." *Sullivan v. Glenn (In re Glenn)*, 502 B.R. 516, 532 (Bankr. N.D. Ill. 2013) (Barnes, J.) (*citing Jairath*, 259 B.R. at 315).

B.   Motions to Dismiss

Rule 12 of the Federal Rules of Civil Procedure provides, in pertinent part, that a party may seek dismissal of a complaint for the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (made applicable to this adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")). As this court has stated:

> A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. 'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing sufficiency, the court views the complaint 'in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor.' *Anchorbank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

*Muhammad v. Reed (In re Reed)*, 532 B.R. 82, 87–88 (Bankr. N.D. Ill. 2015) (Barnes, J.).

As has been noted by the court in earlier cases, that the complaint must state a plausible claim means that the allegations must raise the plaintiff's right to relief above a "speculative level." *Brandt v. PlainsCapital Leasing, LLC (In re Equip. Acquisition Res., Inc.)*, 502 B.R. 784, 791 (Bankr. N.D. Ill. 2013) (Barnes, J.) (*citing Twombly,* 550 U.S. at 570). Thus the standard for evaluating the sufficiency of the complaint "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Anchorbank,* 649 F.3d at 614 (citation omitted); *see also Doe v. Smith,* 429 F.3d 706, 708 (7th Cir. 2005).

8

In taking into account whether a plaintiff has stated a plausible claim, the court considers the complaint itself, as well as "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Further, the court considers the rules of pleading set forth in Rule 8 and, as applicable, Rule 9 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8–9 (made applicable to this adversary proceeding by Bankruptcy Rules 7008 and 7009).

Under Rule 8, a party must state a claim for relief that contains "a short and plain statement of the claim showing that the pleader is entitled to relief …." Fed. R. Civ. P. 8(a)(2). Under Rule 9, which applies in this matter as a claim under section 523 of the Bankruptcy Code as a special matter, *Sequatchie Mountain Creditors v. Lile*, 585 B.R. 426, 437 (N.D. Ohio 2018) ("The pleading requirements of Fed. R. Civ. P. 9(b) are applicable to fraudulent misrepresentation claims under § 523(a)(2)(A)."), a plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

> The particularity requirement of Rule 9(b) should be read in conjunction with Rule 8(a)'s 'short and plain statement' pleading requirement. Thus, it is not necessary that a plaintiff plead each fraudulent detail, so long as the circumstances constituting fraud have been set forth adequately. '[T]he who, what, when, and where aspects of the fraud need not be related with exact details in the complaint as a journalist would hope to relate them to general public.' That is, it is only necessary to set forth a basic outline of fraud in order to alert the defendant of the purported fraud he is defending against.

*New Century Bank v. Carmell* (*In re Carmell*), 424 B.R. 401, 412 (Bankr. N.D. Ill. 2010) (Schmetterer, J.) (citations omitted). As Judge Schmetterer points out, however, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* (*quoting* Fed. R. Civ. P. 9(b)).

Taken together, the result is clear, that if the Complaint states a plausible claim by setting forth the who, what, when and where of the misrepresentation, while at the same time pleading intent generally, and sets these forth in a plain statement, the Complaint meets the standards of Civil Rule 12(b)(6).

## DISCUSSION

Given the standard on a motion to dismiss is permissive, that the Complaint must be considered "in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor," *Anchorbank,* 649 F.3d at 614, there would appear to be little to discuss here. That is not the case.

The Motion, at first glance, seems simple. Its only apparent complexities are that it attempts to plead a defense to section 523(a)(2)(B), a claim not raised in the Complaint, and that it argues that the Plaintiff cannot establish that he justifiably relied on any misstatement, the third element of a section 523(a)(2)(A) claim as set forth by the Seventh Circuit. *Davis*, 638 F.3d at 553; *Ojeda*, 599 F.3d at 716–17.

9

As to the first, the Debtor is correct that a plaintiff need not plead specific legal theories, so long as its allegations give notice of a legally sufficient claim. *Ryan v. Ill. Dep't of Children & Family Servs.*, 185 F.3d 751, 764 (7th Cir. 1999). However, it cannot be the burden on the defendant to identify all plausible causes of actions arising from a plaintiff's pleading and seek to proactively dismiss each. That would be impossible for a defendant to do and it would impermissibly place the plaintiff's burden on the defendant. Instead, a defendant need only address the defects in the pleading as presented. It is for the plaintiff to raise in response such issues and/or for the court to consider whether amendment will correct pleading deficiencies, if any. Here, the Plaintiff acknowledges the Debtor's section 523(a)(2)(B) attack and dismisses it, focusing instead on his section 523(a)(2)(A) claim as presented. Resp., at pp. 3–4. Nothing more need be done here.

As to the second issue, whether or not a plaintiff meets the *Davis* standard and actually, justifiably relied on misrepresentations is not a question for a motion to dismiss. Instead, a motion to dismiss tests only the sufficiency of the complaint and the court need only ask if it is plausible that the plaintiff's reliance was justifiable. Given the liberal standards applied to pleadings at the motion to dismiss stage, the Debtor's allegation that the Plaintiff could not have justifiably relied would also seem to hit a dead end.

It does not, though not necessarily for the reasons raised by the Debtor.

In taking this matter under advisement, the undersigned was immediately struck by the similarity between this and another section 523 action, also being briefed on a motion to dismiss. *See* Motion to Dismiss Adversary Complaint [Adv. Dkt. No. 11 in *Handler v. Gates-Carreon* (*In re Gates-Carreon*), Case No. 19bk35281, Adv. No. 20ap00127 (Bankr. N.D. Ill. filed March 25, 2020)] ("*Gates-Carreon*").[4] In *Gates-Carreon*, the Plaintiff makes remarkably similar allegations against another former client now in bankruptcy. There the Plaintiff alleges he is owed over $80,000, again based on a relationship where he performed work despite unfilled promises to pay from the client. *Id.*

The similarity of these cases sheds the Debtor's justifiable reliance argument in new light. Further, in searching for applicable case law on these issues, the court found the opinions previously referenced in *Handler I*, *Handler II* and *Handler III*. Each of these cases is similar to the matter at bar and *Gates-Carreon*. All told, the court found sixteen section 523 actions brought by Handler against former clients in bankruptcy.[5] Excluding the two presently before the undersigned, of the fourteen

---

[4]    Earlier, the court noted its authority to take judicial notice of its own docket. *Egidi*, 1993 WL 69146, at *2; *Brent*, 458 B.R. at 455 n.5. Further, despite the limited scope of inquiry on the motion to dismiss, the Seventh Circuit has made clear, as also noted above, that such inquiry extends to "information that is properly subject to judicial notice." *Williamson*, 714 F.3d at 436.

[5]    The sixteen cases include the case at bar, *Handler I*, *Handler II*, *Handler III* and *Gates-Carreon*, as well as *Handler v. Scuito* (*In re Scuito*), Case No. 17bk25074, Adv. No. 17ap00569 (Bankr. N.D. Ill. filed Nov. 22, 2017) (Hunt, J.) ("*Scuito*"); *Handler v. Nielsen* (*In re Nielsen*), Case No. 17bk17860, Adv. No. 17ap00471 (Bankr. N.D. Ill. filed Sept. 11, 2017) (Schmetterer, J.) ("*Nielsen*"); *Handler v. Thomas* (*In re Thomas*), Case No. 17bk10046; Adv. No. 17ap00364 (Bankr. N.D. Ill. filed July 7, 2017) (Schmetterer, J.) ("*Thomas*"); *Handler v. Hill* (*In re Hill*), Case No. 16bk29475, Adv. No. 16ap00738 (Bankr. N.D. Ill. filed Dec. 16, 2016) (Barnes, J.) ("*Hill*"); *Handler v. Jackson* (*In re Jackson*), Case No. 15bk24532, Adv. No. 15ap00646 (Bankr. N.D. Ill. filed Sept. 11, 2015) (Barnes, J.) ("*Jackson*"); *Handler v. Johnson* (*In re Johnson*), Case No. 11bk39538, Adv. No. 11ap02688 (Bankr. N.D. Ill. filed Dec. 27, 2011) (Hollis, J.) ("*Johnson*"); *Handler v. Sokol* (*In re Sokol*), Case No. 10bk12071, Adv. No. 10ap00897 (Bankr. N.D. Ill. filed Apr. 20, 2010) (Hollis, J.) ("*Sokol*"); *Handler v. Hatzipetros* (*In re*

remaining, two (*Ferguson* and *Thomas*) resulted in default judgment in favor of the Plaintiff. Those two matters were also the only two matters in which the defendants were not represented by counsel. In the *Thomas* matter, despite the default, Judge Schmetterer after a prove-up on the matter entered judgment in favor of the defendant.

Of the twelve that remain, eight (*Scuito*, *Hill*, *Jackson*, *Johnson*, *Sokol*, *Hatzipetros*, *Washington* and *Steinberg*) appear to have settled outright. That leaves *Nielsen* and the three cases for which opinions were issued, *Handler I*, *Handler II* and *Handler III*.

In *Nielsen*, Judge Schmetterer first dismissed the complaint for failure to meet the heightened pleading standards of Rule 9(b). Order [Adv. Dkt. No. 9 in *Nielsen*]. That Order granted leave to amend, which the Plaintiff did. On the amended complaint, Judge Schmetterer again dismissed, this time with prejudice and a written opinion. Opinion on Defendant's Motion to Dismiss Adversary Complaint [Adv. Dkt. No. 26] (the "Nielsen Opinion"). In the Nielsen Opinion, Judge Schmetterer considered the allegations regarding payment misrepresentations and lack of intent to ever repay and concluded that "even when taken altogether and considered in a light most favorable to Plaintiff, none of these factual allegations support Plaintiff's assertion of fraud on Defendant's part." *Id.* at 8. Further, he determined that the Plaintiff "blindly relied upon a statement, which he knew to be vague and unlikely in order to continue accruing fees in a case that he was unwilling to withdraw from" and that such actions failed to establish justifiable reliance under *Field v. Mans. Id.* at 10–11. The case was thus dismissed with prejudice.

As previously noted, in *Handler I*, Judge Goldgar held the Plaintiff's allegations up to a standard of what was, or was not, a potential false statement of fact. As a result of that inquiry, Judge Goldgar dismissed the Plaintiff's claim that the defendant therein retained the Plaintiff by falsely representing he would pay the Plaintiff when he never intended to pay in full. *Handler I*, at pp. 5–6.[6] In *Handler II*, the Plaintiff brought a nearly identical claim and received a nearly identical dismissal. *Handler II*, at pp. 5–6.[7]

What survived dismissal, however, in each of *Handler I* and *Handler II*, was the Plaintiff's contention that the proverbial 'check is in the mail' statements by the defendants therein caused the Plaintiff to continue to work. *Handler I*, at pp. 8–9; *Hander II*, at pp. 6–8. As Judge Goldgar stated in

---

*Hatzipetros*), Case No. 09bk24970, Adv. No. 09ap00736 (Bankr. N.D. Ill. filed Aug. 19, 2009) (Schmetterer, J.) ("Hatzipetros"); *Handler v. Washington* (*In re Washington*), Case No. 09bk20311, Adv. No. 09ap00585 (Bankr. N.D. Ill. filed July 10, 2009) (Sonderby, J.) ("Washington"); *Handler v. Steinberg* (*In re Steinberg*), Case No. 05bk37389, Adv. No. 05ap02789 (Bankr. N.D. Ill. filed Dec. 23, 2005) (Goldgar, J.) ("Steinberg"); and *Handler v. Ferguson* (*In re Ferguson*), Case No. 01bk25743, Adv. No. 01ap01346 (Bankr. N.D. Ill. filed Dec. 28, 2001) (Schmetterer, J.) ("Ferguson").

[6]   In *Handler I*, Judge Goldgar also observed a peculiarity around such a claim, that the Plaintiff alleged a fraudulent intent to only partially perform, which is at odds with the case law that states partial performance suggests no fraudulent intent. *Handler I*, at p. 6 n.2 (*citing Lefelstein v. Donlevy* (*In re Donlevy*), 342 B.R. 774, 780 (Bankr. N.D. Ill. 2006) (Schmetterer, J.); *Bednarsz v. Brzakala* (*In re Brzakala*), 305 B.R. 705, 712 n.3 (Bankr. N.D. Ill. 2004) (Goldgar, J.). Also in *Handler I*, the Plaintiff's claim that the defendant had broken a promise not to file for bankruptcy was held to tantamount to be based on an unenforceable violation of public policy against the freedom to file for bankruptcy. *Handler I*, at pp. 6–8.

[7]   *Handler II* was so close to that of *Handler I* that Judge Goldgar repeated to the Plaintiff nearly the exact same observation regarding the peculiarity of the partial performance claim. *Handler II*, at 6 n.4.

*Handler I*, "[t]he amended complaint provides 'the who, what, when, where, and how' of the claim, and the information supplied is easily enough to satisfy the twin concerns of the Rule: that the defendant have notice of the claim and that the claim be asserted responsibly." *Handler I*, at p. 8 (*quoting Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011)).

After Judge Goldgar's rulings in *Handler I* and *Handler II*, as was represented in each of the Plaintiff's motions to voluntarily dismiss, which were granted, each of the matters settled.

This leaves *Handler III*, the only of the thirteen closed cases to have gone to trial. In *Handler III*, Judge Cassling was presented with similar arguments but a very different set of underlying facts. As set out in his Order Determining Dischargeability of Debt [Adv. Dkt. No. 175 in *Handler III*], the defendants were both attorneys licensed to practice law in the State of Illinois. *Id.* at p. 2, ¶ A. Judge Cassling found each of their respective testimony unreliable in the matter and, as the case progressed to trial, the defendants' counsel withdrew and the defendants were sanctioned for failure to comply with discovery orders. The defendants also appealed the judgment, though later dismissed that appeal.

In *Handler III*, Judge Cassling found that the defendants never intended to pay the Plaintiff the entirety of what he was owed, as indicated by their repeated and specific lies about payments, their payment of creditors during the same period, their demonstrated ability to make the payments based on bank account balances, and their *de minimus* payments made only at critical junctures in his representation of them. *Id.* at pp. 9–12. However, Judge Cassling limited the recovery of the Plaintiff as he had continued to rely on the defendants' misstatements even after, by his own admission in a communication to the defendants, he had characterized his prospect of being paid as remote. *Id.* at p. 13.

There is something to be taken from each of these cases.

The court agrees with Judge Schmetterer that promises to pay are very rarely actionable and shares his skepticism regarding justifiable reliance. At the same time, the court cannot find that the Plaintiff's alleged reliance is not plausibly justifiable under the standards applicable to a motion to dismiss. This does not mean, of course, that such a claim will succeed on the merits, but only that it meets the very permissive standards applicable to a motion to dismiss for failure to state a claim upon which relief can be granted.

The court also agrees with Judge Cassling on those same points, though notes that the question of payments having been made appears to be carefully pled around here by the Plaintiff— perhaps in response to Judge Goldgar's earlier noted observation on the same. When beginning this inquiry, the court carefully examined the allegations and support contained and attached to the Complaint. In comparing those to the Response, the court has noted that the exhibits attached to the Response are not entirely the same as those attached to the Complaint.[8] In particular, the

---

[8]    While this addition might trigger Rule 12's procedures that where the presentation of matters outside the pleadings must result either in the exclusion of those matters or the conversion, after notice and a reasonable opportunity to present additional, pertinent material, of the matter to one of summary judgment, *see* Fed. R. Civ. P. 12(d) (made applicable by Bankruptcy Rule 7012(b)), the court does not believe that it matters. The additional invoices are within the scope of matters raised in the Complaint, and their inclusion

invoices attached to the Complaint never indicate a payment from the Debtor. While, as noted above, the Plaintiff does not state he was never paid, he implies it and fails to reflect in his pleading any of the payments that were, per the Response's exhibits, clearly made.

Still, the standard on a motion to dismiss is not whether selectively omitted facts would harm a plaintiff's case, but rather whether the facts as pled plausibly state a claim. Here, the court concludes that they do, but only as Rule 9(b) allows complaints to plead intent generally and because intent is, as was noted above, rarely expressly seen in the facts without inference. The Plaintiff's pleading regarding the Debtor's intent is mere speculation. Without the permissiveness of Rule 9(b) regarding intent, the Complaint here would not rise above mere speculation as the Debtor's intent is not, in the court's view, reasonably inferred from the facts as pled. Despite the questionable approach taken here, however, because of the latitude granted the Plaintiff under the controlling law, the court finds that the Complaint does state a claim for relief upon which relief may be granted.

This determination is not, however, a determination on the question of whether the Complaint was submitted for an improper purpose. Judge Goldgar concluded that the amended complaint established that the claim was asserted responsibly. *Handler I*, at p. 8; *Handler II*, at p. 8. This court cannot so conclude, at least not at this stage.

The Seventh Circuit has described the particularity requirements in Rule 9(b) by stating that "[c]ourts have a special institutional interest in seeing that such allegations are made with care so that claims advanced solely for their nuisance or settlement value can be quickly identified and valuable public judicial resources not wasted." *Lachmund v. ADM Inv'r Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999). Here, the Plaintiff has brought a series of section 523 actions all claiming essentially the same thing—that his clients lied to him about payment and that he was justified in relying on those lies and continuing to work. He has succeeded on the merits only once, under a particularly egregious set of facts with unsympathetic defendants. All other times the matters settled or, as was noted above and is of particular concern, were concluded by default against *pro se* defendants.

These claims amount to hundreds of thousands of dollars of unpaid fees. The frequency and amount of these actions calls into question their propriety. The Plaintiff has either had a horrible string of bad luck with his clients, is an egg-shell plaintiff[9] or is bringing these actions for an improper purpose of coercing settlement. *Cf. Stelmokas v. Sinkuniene* (*In re Sinkuniene*), Case No. 10-bk-10717, Adv. No. 10-ap-01418, 2012 WL 4471583 (Bankr. N.D. Ill. Sept. 27, 2012) (Barnes, J.) (wherein the undersigned declined to award sanctions for procedural due process reasons but found the plaintiff's repeated bringing of meritless claims in order to win by default or settled otherwise met the standards of Bankruptcy Rule 9011).

Such a determination, given that Rule 9(b)'s otherwise safeguarding of these types of matters is restrained by its liberal standard on intent, is beyond the scope of the court's inquiry today. The court reserves ruling on such issues for a time and place when they are properly before it.

---

has only been considered for the purposes of warning the parties regarding future actions, not the outcome of the Motion.

[9]      An "egg shell plaintiff" is a plaintiff whose vulnerability to harm must be taken into account when apportioning damages. *See, e.g.*, *Cobige v. City of Chicago, Ill.*, 651 F.3d 780, 982 (7th Cir. 2011), *as amended on denial of reh'g* (Sept. 8, 2011).

CONCLUSION

For the foregoing reasons, the Complaint plausibly states a claim upon which relief can be granted under the very permissive standards appliable at this stage.  As a result, the Motion must be denied.  A separate order will be issued concurrent with this Memorandum Decision.

Dated:  September 2, 2020                              ENTERED:

                                                     _____
                                                     Timothy A. Barnes
                                                     United States Bankruptcy Judge