UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Case No. 19bk31162 |
| Emily Moore, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| Joel F. Handler, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 20ap00074 |
| | ) | |
| | ) | Judge Timothy A. Barnes |
| Emily Moore, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

TIMOTHY A. BARNES, Judge.

<u>MEMORANDUM DECISION</u>

The matter before the court arises upon the court's finding of default in the above-captioned adversary proceeding.  *See* Order Granting Adversary Plaintiff's Motion for a Default Judgment [Adv. Dkt. No. 36] (the "<u>Default Order</u>").  Upon entry of the Default Order, the court entered a scheduling order to further investigate the amount of damages, if any, that should stem from the default in light of the allegations by evidence.[1]  *See* Scheduling Order [Adv. Dkt. No. 37].

Upon considering submissions by plaintiff Joel F. Handler (the "<u>Plaintiff</u>") and taking the matter under advisement on February 18, 2021, the court determines as follows:  Judgment against defendant Emily Moore (the "<u>Debtor</u>"), previously found in default in this matter, is appropriate in an amount not to exceed $15,759.97 on the sole count under the single-count Complaint for Declaratory Judgment Objecting to the Discharge of a Particular Debt Pursuant to 11 U.S.C. § 523(a)(2)(A) [Adv. Dkt. No. 1] (the "<u>Complaint</u>").  While the court finds that the default established the other elements for a finding of nondischargeability for misrepresentation, the Plaintiff's reliance on the same is not entirely justified.  As a result, the court concludes that amounts billed by the Plaintiff after December 1, 2016, are dischargeable.  Partial judgment in favor of the Plaintiff will accordingly be entered concurrent with the entry of this Memorandum Decision.

---

[1]     Such a step is specifically authorized under Rule 55(b) of the Federal Rules of Civil Procedure (the "<u>Civil Rules</u>"), made applicable to this adversary proceeding by Rule 7055 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").  Why it was warranted specifically in this matter is discussed *infra*.

JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").  28 U.S.C. § 1334(a).  The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b).  District courts may refer these cases to the bankruptcy judges for their districts.  28 U.S.C. § 157(a).  In accordance with section 157(a), the District court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy court for the Northern District of Illinois.  N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred has statutory authority to enter final judgment on any proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code.  28 U.S.C. § 157(b)(1).  Bankruptcy judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code.  28 U.S.C. § 157(b)(3).  As to the former, the bankruptcy court may hear and determine such matters.  28 U.S.C. § 157(b)(1).  As to the latter, the bankruptcy court may hear the matters, but may not decide them without the consent of the parties.  28 U.S.C. §§ 157(b)(1), (c). Absent consent, the bankruptcy court must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected."  28 U.S.C. § 157(c)(1).

In addition to the foregoing considerations, a bankruptcy judge must also have constitutional authority to hear and determine a matter.  *Stern v. Marshall*, 564 U.S. 462 (2011).  Constitutional authority exists when a matter originates under the Bankruptcy Code or, in noncore matters, where the matter is either one that falls within the public rights exception, *id.*, or where the parties have consented, either expressly or impliedly, to the bankruptcy court hearing and determining the matter. *See, e.g.*, *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1939 (2015) (parties may consent to a bankruptcy court's jurisdiction); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough").

In this case, the Plaintiff asked the court to enter judgment in the amount of his nondischargeable claim.  An open question exists whether, on such a request, an Article I bankruptcy court can enter monetary judgment.  The Seventh Circuit, in a case predating *Stern*, encouraged the bankruptcy court to do just that.  *In re Hallahan*, 936 F.2d 1496, 1508 (7th Cir. 1991) (concluding that once a party submits itself to adjudication before the bankruptcy court, it submits itself to all that entails).  Later, the Seventh Circuit appeared to question that conclusion.  *Lee v. Christenson*, 558 Fed.Appx. 674, 676 (7th Cir. 2014) ("[I]t is unclear whether *Stern* ... restricts a bankruptcy court's power to resolve a creditor's state-law claim when the court decides whether that claim is nondischargeable.").

Since then, encouragement similar to that in *Hallahan* has been given, but that encouragement was not unfettered.  *Siragusa v. Collazo* (*In re Collazo*), 817 F.3d 1047, 1053 (7th Cir. 2016).  There, the Seventh Circuit stated that a bankruptcy court hearing a section 523 matter "could have declined to award damages and instead remitted the creditors … to their state-court remedies." *Id.* at 1053.  However, in that same opinion, the Circuit stated that the trial court should consider

2

whether the parties might consent to the bankruptcy court's adjudication as permitted by *Wellness*. *Id.* at 1054.

Here the Plaintiff has unquestionably consented to this court's jurisdiction by asking for the very relief in question. *Dragisic v. Boricich (In re Boricich)*, 464 B.R. 335, 337 (Bankr. N.D. Ill. 2011) (Schmetterer, J.). The Debtor, on the other hand, has not. While the Debtor did, of course, commence the bankruptcy case and did defend this suit to a point, the court cannot conclude that issue was ever squarely before the Debtor in a way that consent could be implied. Further, the Plaintiff here appears to assume that his billing is reasonable as stated, and thus has not addressed the reasonableness of his billing, something the court would have to consider if doing so.

As to jurisdiction specifically, an action under section 523 of the Bankruptcy Code is unequivocally a bankruptcy cause of action. *In re Glenn*, 502 B.R. 516, 522 (Bankr. N.D. Ill. 2013) (Barnes, J.), *aff'd sub nom. Sullivan v. Glenn*, 526 B.R. 731 (N.D. Ill. 2014), *aff'd,* 782 F.3d 378 (7th Cir. 2015). It arises in a case under title 11 and the code specifies it as a core proceeding. 28 U.S.C. § 157(b)(2)(I). While such actions may turn on state law, determining the scope of a debtor's discharge is a fundamental part of the bankruptcy process. *See Deitz v. Ford (In re Deitz)*, 469 B.R. 11, 20 (B.A.P. 9th Cir. 2012). As observed by one bankruptcy court, "there can be little doubt that [a bankruptcy court], as an Article I tribunal, has the constitutional authority to hear and finally determine what claims are nondischargeable in a bankruptcy case." *Farooqi v. Carroll (In re Carroll)*, 464 B.R. 293, 312 (Bankr. N.D. Tex. 2011); *see also Dietz*, 469 B.R. at 20; *In re Boricich*, 464 B.R. at 337.

As a result, the court concludes that it has jurisdiction, statutory authority and constitutional authority to hear and determine nondischargeability and the limits imposed thereby, but declines to enter monetary judgment.

PROCEDURAL HISTORY

As noted above, the Complaint commencing this matter contains a single count alleging that the Debtor's debt to the Plaintiff is nondischargeable because of misrepresentations made by the Debtor to the Plaintiff.

Rather than answer the Complaint, the Debtor—then represented by counsel—moved to dismiss the Complaint. *See* Motion to Dismiss [Adv. Dkt. No. 6] (the "<u>Motion to Dismiss</u>"). In response, the court entered an order scheduling briefing on the Motion. Order [Scheduling Motion to Dismiss] [Adv. Dkt. No. 9]. After briefing and a hearing thereon, the court denied the Motion to Dismiss. *See Handler v. Moore (In re Moore)*, 620 B.R. 617 (Bankr. N.D. Ill. 2020) (Barnes, J.).[2]

In *Moore*, the court noted its overall concerns with the Plaintiff's approach to this and multiple similar proceedings brought by the Plaintiff. The court noted that a majority of Plaintiff's allegations are mere broken promises to pay, which are not generally actionable under section 523. *Id.* at 629–30. The court also questioned the Plaintiff's justifiable reliance allegations in light of the previous court rulings against the Plaintiff on just such issue. *Id.* at 633. The court noted with

---

[2]  The court notes that while it did take the time to write a formal memorandum decision on the Motion to Dismiss, it chose not to publish the decision. That choice was apparently not respected by Thompson Reuters when it chose to include the decision in their West's Bankruptcy Reporter. As a result, the court will submit this Memorandum Decision for publication as it completes the decision begun in *Moore*.

concern what appears to have been selective disclosure of billing by the Plaintiff, producing invoices that reflect the Debtor's payments only in response to the Motion to Dismiss. *Id.* at 635. Finally, the court questioned whether the Plaintiff was using his position as an attorney to bring actions of questionable merit against former clients who, because of their financial circumstances, were likely to be unrepresented and therefore to settle or default. *Id.*

Still, because of the standard favoring the Plaintiff, the court—while expressing its skepticism that the Complaint would survive summary judgment—declined to dismiss the Complaint. *Id.* at 636.

After the Debtor was unsuccessful, counsel for the Debtor withdrew. *See* Order Granting Leave to Withdraw [Adv. Dkt. No. 31]. Thereafter, the Debtor ceased defending the adversary proceeding and, as a result, the Plaintiff moved for default judgment. *See* Adversary Plaintiff's Motion for a Default Judgment [Adv. Dkt. No. 32] (the "Default Judgment Motion"). When the Debtor did not defend the motion, the court determined the Debtor to be in default. Default Order at ¶ 1.

As noted above, upon entry of the Default Order and in light of the previously expressed concerns, the court entered a scheduling order in order to further investigate and determine the amount of damages, if any, that should stem from the default in light of the allegations by evidence. Scheduling Order [Adv. Dkt. No. 37]. The Debtor failed to appear at any of the subsequent hearings or file anything in response to the Default Judgment Motion or the Scheduling Order.

In considering this matter, the court has reviewed the Complaint, the Default Judgment Motion, including all filings and exhibits filed in conjunction therewith, and has taken into account the Plaintiff's statements at the various hearings thereon. The court has also thoroughly considered its prior order on the Motion to Dismiss and the filings made in relation thereto.

Though the foregoing items do not constitute an exhaustive list of the filings in this adversary proceeding, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).

## BACKGROUND

In *Moore*, the court noted the following regarding the parties' relationship:

- On August 21, 2016, the Debtor retained the Plaintiff "to render legal services in connection with a post-decree domestic relations action against her former husband." Compl., at ¶ 7.

- Pursuant to her agreement with the Plaintiff, the Debtor agreed to compensate the Plaintiff "at the rate of $475.00 per hour and to reimburse him for all costs, including long distance calls, photocopying and mailings, in connection with the action for which he was retained." Compl., at ¶ 8 & Ex. A.

4

- The Debtor made numerous representations to the Plaintiff regarding payment of those same services and costs; such services went mostly if not entirely unpaid.  Compl., at ¶¶ 9–12, 16–18, 21–24, 26–27, 29, 31–32, 34, 36, 38, 40–42, 45–46, 49–51, 53–61, 64–65, 67–72, 74–75, 77–82.

- All told, the Plaintiff worked for the Debtor from August 21, 2016, to December 14, 2017, without full payment for the Plaintiff's services. Compl., at ¶¶ 7, 81 *et passim.*

- The Plaintiff is owed over $47,000 for the unpaid services.  Compl., at ¶ 87.

*Moore*, 620 B.R. at 625–26.

Such were not findings of fact, however, binding on the later determinations in this matter as the applicable standards are different on a motion to dismiss.  On a motion to dismiss, the court "accept[s] the well-pleaded facts in the complaint as true." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011).  The court draws "all reasonable inferences in favor of the plaintiff without engaging in fact-finding." *Trs. of Teamsters Union No. 142 Pension Fund v. AJ & S Trucking, Inc.*, 992 F. Supp. 2d 870, 881 (N.D. Ind. 2014) (citing to *Reger Dev., LLC v. Nat'l City Bank,* 592 F.3d 759, 763 (7th Cir. 2010)).

Thus on the Motion to Dismiss, the court made determinations solely in that context.  Here, however, the Plaintiff seeks a default judgment.  "A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint." *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007) (*citing U.S. v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989)).  "Once the default is established, and thus liability, the plaintiff still must establish his entitlement to the relief he seeks." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004).  "Default judgment is only appropriate if the well-pleaded allegations, along with any evidence submitted to the court, are sufficient to establish a legal claim." *Gard v. B & T Fin. Servs., LLC*, Case No. 2:12–CV–005–JD, 2013 WL 228816, at *1 (N.D. Ind. Jan. 22, 2013) (collecting cases).  While well-pleaded allegations regarding liability are taken as true, a plaintiff must still prove the amount of damages to be awarded. *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012).

The court notes that while it has been pled that the Plaintiff is owed over $47,000 for the unpaid services, Compl., at ¶ 87, as a matter of law it is unclear whether the Debtor actually owes the Plaintiff for such services.  While the contract between the parties sets an hourly rate for the Plaintiff's services, *see* the "Engagement Agreement" attached to Memorandum in Opposition to the Adversary Defendant's Motion to Dismiss [Adv. Dkt. No. 10] (the "<u>Response</u>"), as part of Exhibit 1 thereto, that same agreement provides for a dispute procedure for billed amounts.  Further, even if the contract was unequivocable, Illinois law places a duty on lawyers not to make "an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses."  Ill. Comp. Stat. Sup. Ct. R. of Prof. Conduct 1.5.  Thus, only the Plaintiff's reasonable fees and expenses are compensable.

As a result, the court concludes that Plaintiff *may be* owed over $47,000 for the unpaid services.  However, the Plaintiff has not shown conclusively that he is owed that amount.

As set forth in *Moore*, the parties' relationship deteriorated to a point where the Plaintiff withdrew from his representation of the Debtor in the state court proceedings. *Moore*, 620 B.R.

5

at 626.  During that deterioration, the Debtor made a few small payments to the Plaintiff.  As best as the court can determine,[3] the Debtor paid the Plaintiff the following amounts on the following dates:

|  |  |
|---|---|
| August 28, 2016 | $3,000.00 (the retainer) |
| October 31, 2016 | $4,000.00 |
| January 30, 2017 | $2,000.00 |

Resp., Ex. 1.  Thus in the course of five months, the Debtor paid a total of $9,000.00.  During that same period, the Plaintiff's invoices totaled nearly $30,000.00.  *Id.*  After the Debtor's final payment, despite having received no additional funds from the Debtor, the Plaintiff continued to work and, by the court's calculation, billed more than $26,000.00.  *Id.*

During the Plaintiff's representation of the Debtor, the Plaintiff persistently dunned the Debtor.

- On October 3, 2016, the Plaintiff wrote that "I am extremely concerned whether I am going to get paid."  Compl., Ex. B.

- On December 1, 2016, the Plaintiff wrote that "I cannot keep running a receivable in this case with the prospect that you are going to pay me." Compl., Ex. D.

- On April 19, 2017, the Plaintiff wrote that "since it seems there is no way that you are going to pay me, I am enclosing my motion to withdraw as your attorney."  Compl., Ex. E.

- On August 1, 2017, the Plaintiff wrote that he could not continue representing Moore "merely on a promise" that she is going to pay him. Compl., Ex. H.

- On November 9, 2017, the Plaintiff wrote that "I cannot continue to render work based on your empty promises of payment."  Compl., Ex. Q.

- On November 10, 2017, the Plaintiff wrote that he "will not render any further legal services until the issue of payment is resolved and a definite plan of payment is in effect."  Compl., Ex. S.

All of the foregoing billing, payment and correspondence takes place in light of the Engagement Agreement's provision that the Debtor will not allow the unpaid balance of invoices to exceed $1,000.00.  Resp., Ex. 1.

---

[3]    As noted in *Moore*, the invoices attached to the Complaint do not show the Debtor's payment of the retainer nor the subsequent payments made by the Debtor.  Only in the exhibits attached to the Response are these payments disclosed.  *Moore*, 620 B.R. at 635 ("[T]he invoices attached to the Complaint never indicate a payment from the Debtor. While, as noted above, the Plaintiff does not state he was never paid, he implies it and fails to reflect in his pleading any of the payments that were, per the Response's exhibits, clearly made.").

DISCUSSION

To except a debt from discharge under section 523(a)(2)(A) based on false pretenses or a false representation, the creditor must establish the following elements: (1) the debtor made a false representation or omission of fact; (2) which the debtor (a) knew was false or made with reckless disregard for its truth and (b) made with an intent to deceive; and (3) upon which the creditor justifiably relied. *Reeves v. Davis* (*In re Davis*), 638 F.3d 549, 553 (7th Cir. 2011); *see also Ojeda v. Goldberg*, 599 F.3d 712, 716–17 (7th Cir. 2010); *In re Bero*, 110 F.3d 462, 465 (7th Cir. 1997); *Wachovia Securities, LLC v. Jahelka* (*In re Jahelka*), 442 B.R. 663, 668–69 (Bankr. N.D. Ill. 2010) (Goldgar, J.). A creditor must establish all three elements to support a finding of false pretense or false representation. *Baermann v. Ryan* (*In re Ryan*)*,* 408 B.R. 143, 156 (Bankr. N.D. Ill. 2009) (Squires, J.); *see also Rae v. Scarpello* (*In re Scarpello*), 272 B.R. 691, 700 (Bankr. N.D. Ill. 2002) (Squires, J.).

The first two elements go to liability generally and are conclusively established as a matter of law upon the Debtor's default. *See e360 Insight*, 500 F.3d at 602. While, had the Debtor defended, a question would still exist on these issues, on default it no longer does.[4] What remains is the third element, justifiable reliance. This goes to the Debtor's liability and the Plaintiff's entitlement to a remedy.

The Supreme Court has clarified that section 523(a)(2)(A) requires only a showing of "justifiable" reliance. *See Field v. Mans,* 516 U.S. 59, 73–75 (1995); *see also Mayer v. Spanel Int'l Ltd.*, 51 F.3d 670, 673 (7th Cir. 1995). Justifiable reliance is a less demanding standard than reasonable reliance and "does not mean that [the creditor's] conduct must conform to the standard of the reasonable man." *Sterna v. Paneras* (*In re Paneras*)*,* 195 B.R. 395, 406 (Bankr. N.D. Ill. 1996) (Squires, J.) (*quoting Field*, 516 U.S. at 71).

Whether a party justifiably relies on a misrepresentation is "determined by looking at the circumstances of a particular case and the characteristics of a particular plaintiff." *Id.*; *see also Bombardier Cap., Inc. v. Dobek* (*In re Dobek*), 278 B.R. 496, 508 (Bankr. N.D. Ill. 2002) (Schmetterer, J.). "[A] person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'" *Mercantile Bank v. Canovas*, 237 B.R. 423, 429 (Bankr. N.D. Ill. 1998) (Lefkow, J.) (*quoting Field*, 516 U.S. at 70). "*However, a plaintiff may not bury his head in the sand and willfully ignore obvious falsehoods*." *Johnston v. Campbell* (*In re Campbell*), 372 B.R. 886, 892 (Bankr. C.D. Ill. 2007) (internal quotations omitted) (emphasis added). A creditor may "not 'blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'" *Ojeda*, 599 F.3d at 717 (*quoting Field*, 516 U.S. at 71).

Whether a party justifiably relies on a misrepresentation is determined by examining the circumstances of a specific case and the particular characteristics of the plaintiff. *Ojeda*, 599 F.3d

---

[4]   On default, the Complaint establishes at a bare minimum that the Debtor made misrepresentations that exceeded normal, unactionable promises to pay when she contrived sources of payment in order to induce the Plaintiff to continue to work. *See* Compl., Ex. C (where the Debtor claims she will pay the Plaintiff out of the sale of diamonds). The context of those misrepresentations also establishes that the Debtor made them with the requisite intent. Had the Debtor defended, the court would be forced to consider whether the Debtor's misrepresentations constitute the requisite intent or whether they were made defensively in response to seemingly aggressive overbilling.

at 717.  This is an issue that the Plaintiff has run afoul of in some of his many section 523 actions against former clients.[5]

In *Nielsen*, Judge Schmetterer considered the allegations regarding payment misrepresentations and lack of intent to ever repay and concluded that "even when taken altogether and considered in a light most favorable to Plaintiff, none of these factual allegations support Plaintiff's assertion of fraud on Defendant's part."  Opinion on Defendant's Motion to Dismiss Adversary Complaint [*Nielsen*, Adv. Dkt. No. 26].  Further, he determined that the plaintiff "blindly relied upon a statement, which he knew to be vague and unlikely in order to continue accruing fees in a case that he was unwilling to withdraw from" and that such actions failed to establish justifiable reliance under *Field v. Mans*.  *Id*.  The case was thus dismissed with prejudice.

In *Burkhart*, Judge Cassling determined, after a trial on the merits, that "based on Plaintiff's own admission that his prospect of being paid was remote, any reliance on the Debtor's misrepresentations that payments would be forthcoming was not justified."  Order Determining Dischargeability of Debt [*Burkhart*, Adv. Dkt. No. 175].  Thus, Judge Cassling limited the exempt portion of the Plaintiff's claim to that incurred before that admission.

Here, that point was reached on December 1, 2016, when the Plaintiff by his own admission stated that it would be unwise to continue to work on the Debtor's matter in light of the Debtor's misrepresentations.  Compl., Ex. D.  Any work beyond this point was undertaken in light of the Plaintiff's knowledge of the risks and is unentitled to shelter under the Debtor's misrepresentations.  Reliance after that point is simply not justifiable.[6]

At that point, the Debtor owed the Plaintiff as much as $17,759.97.  *Id*.  As best as the court can determine, that amount credits the two payments previously made by the Debtor.  Applying the

---

[5]      The sixteen cases, when including the case at bar, are:  *Handler v. Gates-Carreon* (*In re Gates-Carreon*), Case No. 19bk35281, Adv. No. 20ap00127 (Bankr. N.D. Ill. filed March 25, 2020)];  *Handler v. Delfino*, Case No. 11bk36013, Adv. No. 11ap01891 (Bankr. N.D. Ill. filed Sept. 14, 2011) (Goldgar, J.);  *Handler v. Boland*, Case No. 19bk00612, Adv. No. 19ap00605 (Bankr. N.D. Ill. filed April 8, 2019) (Goldgar, J.);  *Handler v. Scuito* (*In re Scuito*), Case No. 17bk25074, Adv. No. 17ap00569 (Bankr. N.D. Ill. filed Nov. 22, 2017) (Hunt, J.);  *Handler v. Nielsen* (*In re Nielsen*), Case No. 17bk17860, Adv. No. 17ap00471 (Bankr. N.D. Ill. filed Sept. 11, 2017) (Schmetterer, J.) ("*Nielsen*");  *Handler v. Thomas* (*In re Thomas*), Case No. 17bk10046; Adv. No. 17ap00364 (Bankr. N.D. Ill. filed July 7, 2017) (Schmetterer, J.);  *Handler v. Hill* (*In re Hill*), Case No. 16bk29475, Adv. No. 16ap00738 (Bankr. N.D. Ill. filed Dec. 16, 2016) (Barnes, J.);  *Handler v. Jackson* (*In re Jackson*), Case No. 15bk24532, Adv. No. 15ap00646 (Bankr. N.D. Ill. filed Sept. 11, 2015) (Barnes, J);  *Handler v. Burkhart*, Case No. 14bk24345, Adv. No. 14ap00699 (Bankr. N.D. Ill. filed Sept. 25, 2014) (Cassling, J.) ("*Burkhart*");  *Handler v. Johnson* (*In re Johnson*), Case No. 11bk39538, Adv. No. 11ap02688 (Bankr. N.D. Ill. filed Dec. 27, 2011) (Hollis, J.);  *Handler v. Sokol* (*In re Sokol*), Case No. 10bk12071, Adv. No. 10ap00897 (Bankr. N.D. Ill. filed Apr. 20, 2010) (Hollis, J.);  *Handler v. Hatzipetros* (*In re Hatzipetros*), Case No. 09bk24970, Adv. No. 09ap00736 (Bankr. N.D. Ill. filed Aug. 19, 2009) (Schmetterer, J.);  *Handler v. Washington* (*In re Washington*), Case No. 09bk20311, Adv. No. 09ap00585 (Bankr. N.D. Ill. filed July 10, 2009) (Sonderby, J.);  *Handler v. Steinberg* (*In re Steinberg*), Case No. 05bk37389, Adv. No. 05ap02789 (Bankr. N.D. Ill. filed Dec. 23, 2005) (Goldgar, J.); and  *Handler v. Ferguson* (*In re Ferguson*), Case No. 01bk25743, Adv. No. 01ap01346 (Bankr. N.D. Ill. filed Dec. 28, 2001) (Schmetterer, J.).

[6]      The court notes that in light of the Plaintiff's clear experience with nonpayment from misrepresenting clients as evidenced by his many section 523 actions, the justifiable reliance point is arguably earlier.  However, in light of the Debtor's failure to defend and December 1, 2016, being the first clear indication that the Plaintiff understood the risks, the court does not consider here that history for this purpose, despite the great possibility that the Plaintiff is intentionally "burying his head in the sand."  *Campbell*, 372 B.R. at 892; *see also, e.g.*, *Cobige v. City of Chi.*, 651 F.3d 780, 782 (7th Cir. 2011), *as amended on denial of reh'g* (Sept. 8, 2011) (an "egg shell plaintiff" is a plaintiff whose vulnerability to harm must be taken into account when apportioning damages).

Debtor's later payment of $2,000.00, that means that the nondischargeable amount of the Plaintiff's claim is may not exceed $15,759.97.

CONCLUSION

For the foregoing reasons, the reasonable fees and expenses billed by the Plaintiff on and prior to December 1, 2016, after crediting the payments made, but not exceeding $15,759.97, are nondischargeable under section 523(a)(2)(A).  The Plaintiff's remaining claim remains dischargeable.  The court will enter a separate judgment order to this effect concurrently with this Memorandum Decision.

Dated:  March 5, 2021                    ENTERED:

_____
Timothy A. Barnes
United States Bankruptcy Judge

9